**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

_____

| | |
|---|---|
| THE ESTATE OF LACETTA ANNE TESTER, ) | |
| by and through Personal Representative ) | |
| Nathan D. Tester, ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|     vs. ) | Civil Action No. 3:24-cv-00005 |
| ) | |
| THE VILLAGE AT HAMILTON POINTE, LLC, ) | (Electronically Filed) |
| An Indiana Limited Liability Company; ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| RIVERVIEW HOSPITAL d/b/a ) | |
| HAMILTON POINTE HEALTH AND REHAB, ) | |
| An Indiana County Hospital Corporation; ) | |
| ) | |
| TENDER LOVING CARE MANAGEMENT, INC. ) | |
| d/b/a TLC MANAGEMENT ) | |
| An Indiana For-Profit Corporation; and ) | |
| ) | |
| NEWBURGH PROPERTY MANAGEMENT LLC ) | |
| An Indiana Limited Liability Company; ) | |
| ) | |
|         Defendants. ) | |

_____


**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.      Plaintiff, Nathan D. Tester as Personal Representative of the Estate of Lacetta

Anne Tester (hereinafter, the "Estate"), deceased, brings this action against The Village at

Hamilton Pointe, LLC (hereinafter, "Hamilton Pointe"), Riverview Hospital d/b/a Hamilton

Pointe Health and Rehab (hereinafter, "Riverview"), Tender Loving Care Management, Inc.

d/b/a TLC Management (hereinafter, "TLC"), and Newburgh Property Management, LLC

(hereinafter, "NPM"). (collectively, the "Defendants") for depriving and/or conspiring to

1

deprive Lacetta Anne Tester of rights secured under the Omnibus Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 43 U.S.C. § 1396, *et seq.*, the Federal Nursing Home Regulations found in 42 C.F.R. Section 483, and the Constitution of the United States of America, under color of state law, pursuant to 42 U.S.C. § 1983.

## I.   PARTIES

2.      Lacetta Anne Tester (hereinafter, "Ms. Tester") is a deceased adult individual who resided at Hamilton Pointe, located at 3800 Eli Place, Newburgh, Warrick County, Indiana 47630, which is in the geographic boundaries of the Southern District of Indiana, at the time of her death.

3.      Plaintiff, the Estate of Lacetta Anne Tester (the "Estate") is a duly opened estate pending in the Probate Division of the Warrick Circuit Court and administered by Personal Representative, Nathan D. Tester (hereinafter, "Mr. Tester"), who is the Ms. Tester's adult son, and the sole beneficiary of the intestate estate.  Mr. Tester was appointed Personal Representative of the Estate by order of the Warrick Circuit Court, Probate Division, on December 7, 2023 in Cause No. 87C01-2311-EU-000162, *In the Matter of the Unsupervised Estate of Lacetta Anne Tester.*

4.      Ms. Tester passed away on January 12, 2022 in Warrick County, Indiana.  Ms. Tester did not leave a surviving spouse, and Mr. Tester is her only surviving child.

5.      Defendant The Village at Hamilton Pointe, LLC is an Indiana Limited Liability Company that conducts business as a long-term skilled nursing facility that is located at 3800 Eli Place, Newburgh, Indiana 47630.  It is the facility where Ms. Tester resided at the time of the facts alleged herein.  According to the Office of the Indiana Secretary of State, it

may be served through its Registered Agent, Ryan M. Ott, at 1800 N. Wabash Road, Suite 300, Marion, Indiana 46952.

6.      Defendant Riverview Hospital d/b/a Hamilton Pointe Health and Rehab is an Indiana County Hospital Corporation whose principal office is located 325 Westfield Road, Noblesville, Indiana 46060.  It is a municipal corporation, owned by Hamilton County, Indiana, who owned Hamilton Pointe at all times relevant to this action.  It may be served through its Registered Agent for service, Brian M. Heaton, at 12800 N. Meridian, Suite 300, Carmel, Indiana 46032.

7.      Defendant Tender Loving Care Management, Inc. d/b/a TLC Management is an Indiana For-Profit Corporation licensed to do business in the State of Indiana.  It is a privately held nursing home management company that at all times relevant to this action has been under contract with Hamilton Pointe to manage and operate Hamilton Pointe, as well as Riverview Hospital's other nursing homes throughout the State of Indiana. According to the Office of the Indiana Secretary of State, it may be served through its Registered Agent, Ryan M. Ott, at 1800 N. Wabash Road, Suite 300, Marion, Indiana 46952.

8.      Defendant Newburgh Property Management LLC is an Indiana Limited Liability Company located at 3800 Eli Place, Newburgh, Indiana 47630.  It is the owner of the real property located at 3800 Eli Place, Newburgh, Indiana 47630.  According to the Office of the Indiana Secretary of State, it may be served through its Registered Agent, Ryan M. Ott, at 1800 N. Wabash Road, Suite 300, Marion, Indiana 46952.  At all times relevant herein, it had knowledge of and acquiesced to the violations of Ms. Tester's rights as alleged herein.

## II.     JURISDICTION AND VENUE

9.     The Southern District of Indiana has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this action presents an issue that arises under the laws of the United States, 18 U.S.C. 1961 *et seq*.

10.     All Defendants have materially participated in conduct that had intended and foreseeable effects on Plaintiff such that this Court can exercise personal jurisdiction over Defendants.  Furthermore, Defendants' conduct was purposefully directed at Plaintiff in this forum.

11.     The Court also has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965, because Defendants have sufficient minimum contacts with the District.

12.     All acts and events relating to this action occurred within the geographical boundaries of the Southern District of Indiana.  As such, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).

## III.     GENERAL FACTUAL ALLEGATIONS

13.     On or about August 2, 2021, Ms. Tester was admitted to Hamilton Pointe for ongoing care of medical issues and chronic medical concerns, as well as rehabilitation needs.  She was to undergo physical therapy, speech therapy, and occupational therapy.

14.     Ms. Tester had Medicare as her primary insurance, and Medicaid as secondary insurance.

15.     On October 19, 2021, Ms. Tester was admitted to the emergency room of Deaconess Hospital (hereinafter, "Deaconess") in Newburgh, Indiana due to increased confusion and lethargy over a period of two (2) days.

16.     Deaconess determined that her confusion during this time was due to a toxic and

metabolic encephalopathy that stemmed from an acute urinary tract infection.

17.     When treated with antibiotics, Ms. Tester's confusion resolved.

18.     On October 21, 2021, Ms. Tester was discharged from Deaconess and readmitted to Hamilton Pointe.

19.     On December 26, 2021, Ms. Tester was again admitted to Deaconess for treatment of acute respiratory failure, and was placed on mechanical ventilation at that time.

20.     Ms. Tester was removed from mechanical ventilation and readmitted to Hamilton Pointe on January 1, 2022.

21.     At all points thereafter, Ms. Tester was immobile and completely unable to leave her bed at Hamilton Pointe without assistance.

22.     Furthermore, in the beginning of January 2022, Mr. Tester received a call from a staff member at Hamilton Pointe, who said that he had taken Ms. Tester's blood oxygen level, but that the machine "must be broken" because it is not possible for it to be that low and for her to still be alive.  Mr. Tester is unaware of any additional readings that were taken to confirm her Ms. Tester's blood oxygen level at that time.

23.     On January 8, 2022, Ms. Tester called the Warrick County Sheriff to report that she was having difficulty breathing (the "January 8 Call for Help").

24.     A transcription of the January 8 Call for Help is as follows:[1]

> DISPATCHER:        911 where's your emergency?
>
> MS. TESTER:        (unclear) Hamilton Pointe (unclear) 303B as in boy, to Gateway Hospital.
>
> DISPATCHER:        What was your address again?

---

[1] An Open Records Request To Inspect Public Records (the "Public Records Request") was issued to the Warrick County Sheriff's Department by counsel for Plaintiff on or about January 26, 2023. The January 8 Call for Help was produced by the Warrick County Sheriff's Office as part of a Public Records Requests.

MS TESTER:              Hamilton Pointe.

DISPATCHER:             OK. All right. And what's going on with you?

MS. TESTER:             Well, I came out of Gateway not too, too many – about a week ago. I have trouble trying to breathe. I have trouble trying to get my food to go down – my food.

DISPATCHER:             Breath. You're having shortness of breath. Is that right? Shortness of breath? Is that what's going on?

MS. TESTER:             Well, I always have shortness of breath, but I'm just trying to tell you. I –

DISPATCHER:             OK, what – what's your?

MS. TESTER:             Oh God, just come get me. OK.

DISPATCHER:             Ok, we will, but you've gotta tell me who you are, so we'll know where to send the ambulance to.

MS. TESTER:             I'm Lacetta Anne Tester. My room is 303 B as in boy.

DISPATCHER:             303B, OK alright, you said Rosetta.

MS. TESTER:             It's Lacetta – L. Lacetta, La–Cetta.

DISPATCHER:             Lacetta – I'm sorry.

MS. TESTER:             Yeah, and I go by my middle name, Anne.

DISPATCHER:             OK, Lacetta Anne. OK, alright.  Miss, um, so you're at Hamilton Pointe and you said 303B?

MS. TESTER:             Yes.

DISPATCHER:             OK. What's the phone number for you?

MS. TESTER:             Oh honey, I – I don't know.

DISPATCHER:             OK, alright. OK, alright. I'll get an ambulance sent your way, OK?

MS. TESTER:             Thank you, honey.

DISPATCHER:             Miss Lacetta, how old are you?

MS. TESTER:        69.

DISPATCHER:     You're 69. OK. OK.

MS. TESTER:        Yeah.

DISPATCHER:     OK. Alright. I'll get someone out there to you.

MS. TESTER:        Thank you, honey.

DISPATCHER:     You're welcome. Uh-huh. Alright. Bye-bye.

25.    A Computer Aided Dispatch Report ("CAD") recorded by the Warrick County Sheriff's Office on January 8 at 11:55 p.m. (the "January 8 CAD") confirmed the following:[2]

| 2022008064 | 01/08/2022 11:55:38 3800 ELI PLACE | | WC | 303B | | EMS | MED3 166 |
|---|---|---|---|---|---|---|---|
| DIFFICULTY BREATHING | P | LACHETTA ANN | PHONE HAMILTON POINT | | C | | |
| Notes: 69 yof difficulty breathing [01/08/22 12:01:02 NHOPKINS] | | | | | | | |

Time Received: 01/08/2022 11:55:38   1st Arrive:                    Incident Response Time:  #Error

//   : :   00:00:00   00:00:00   00:00:00   00:00:00   00:00:00                              : :             : :

**# Units: 0**

26.    The January 8 CAD does not show that any unit was dispatched to Ms. Tester's aid at that time.

27.    On January 9, 2022, the Progress Notes indicate that Ms. Tester wanted the Hamilton Pointe "staff to stay in her room and not leave because she [was] afraid."  It is unclear from the Progress Notes whether anyone stayed with her or not.[3]

28.    The Progress Notes entered on January 10, 2022 by Carolyn Allen, a Social Service Assistant, reads as follows, in relevant part:

---

[2] The January 8 CAD was produced in response to the Public Records Request by the Warrick County Sheriff's Office.

[3] The Progress Notes were among the medical records produced by Hamilton Pointe to Mr. Tester upon his request in February 2022.

**Description of the behavior**: Behavior sheets for 1/8/22 and 1/9/22 indicate that the resident was asking the staff to stay in the room with her, that she did not want to be by herself, and the other indicates that the resident was yelling for help and not using the call light, and she was calling the facility line over and over and called 911 because she did not want to stay in the room. Resident is on TBP due to non-vaccinated status and return from the hospital. Resident noted to be cursing.

**Intervention**: Approached in a calm manner, established eye contact, explained what they are going to do, used simple sentences, did not argue or confront.

**Outcome and Prevention**: Resident and this SS talked today about her behavior over the weekend, she stated that she is "fine being alone"
she just wanted to get out of the room, she understands the day she can come out of the room, and she understands why she is in TBP.

29.     Between January 2, 2022 and January 11, 2022, Ms. Tester lost anywhere between twenty-four (24) and twenty-nine (29) pounds, without explanation in the medical records provided by Hamilton Pointe.

30.     On January 12, 2022 at 12:05 a.m., a CAD from the Warrick County Sheriff's Office was recorded as follows:



31.     A transcription of Ms. Tester's calls to the Warrick County Sheriff's Office (the "January 12 Pleas for Help") are as follows:[4]

---

[4] The January 12 Pleas for Help were produced by the Warrick County Sheriff's Office as part of the Public Records Request. The calls were not separated, but instead, were all compressed as if one call. The undersigned has deduced that there were at least three (3) calls to the Warrick County Sheriff's Office comprising the January 12 Pleas for Help.

8

DISPATCHER:      911 Dispatch. 9-1-1 Hello

MS. TESTER:      (broken voice) Hello.  Ma'am.  I'm in (unclear) with Hamilton
Point Nursing Home discharged from Gateway Hospital, but all
night I've been trying to get help and they came into my room
maybe twice but I need serious help. I don't have enough oxygen
and they won't (unclear) by bi-pap machine on me. (unclear)  is
terrible.   I need to see a physician.   I cannot walk, I cannot
(unclear)  my bed by myself and they're just screwing with me and
I don't know how to work this phone very well.  I'm lucky to have
gotten you.  I need you to come and help me, please. (unclear)....
I'm going to be dead.

DISPATCHER:      OK.  What room are you in?  Do you know what room number you
are in?

MS. TESTER:      3033.

DISPATCHER:      I'm sorry?

MS. TESTER:      3033.

DISPATCHER:      What's your name?

MS. TESTER:      Anne Tester. T-E-S-T-E-R and Anne has an E on the end of it:
A-N-N-E

DISPATCHER:      I'm sorry. What was your –

MS. TESTER:      I need some help desperately. Please come and help me, please…

DISPATCHER:      OK.  I'm sorry.  What was your first name?

MS. TESTER:      Anne.  A-N-N-E

DISPATCHER:      OK….Tester?

MS. TESTER:      Yes. Please come help me.  I need you so badly.  Please

DISPATCHER:      Alright –

MS. TESTER:      Will you pick me up, please (unclear) Please help me, please
(sobbing) please come here and help me.  Help me get what I need
(unclear) can't live like a regular patient, which I haven't.  They
want to treat me different and I don't like that.

DISPATCHER:          OK –

MS. TESTER:          I need help.  I'm very sick (coughing) I know that I just don't have long to live, but now I think I'm not (unclear) and I'm getting me a physician where I can last (unclear) tried all night to have….to help me. I can't do that, ma'am.

DISPATCHER:          OK.

MS. TESTER:          Please help me, please.  Please come and help me, please!

DISPATCHER:          OK – We're sending someone to help you, OK?

MS. TESTER:          Huh?  What did you say?

DISPATCHER:          We're sending someone to help you, OK?

MS. TESTER:          Yeah.  Are you guys coming?

DISPATCHER:          We're… yes, we're sending someone to help you.

MS. TESTER:          Oh, thank you

DISPATCHER:          You're welcome.

MS. TESTER:          You'll be able to find me, right?

DISPATCHER:          Huh? Yes, we'll be able to find you, yes.

MS. TESTER:          Oh, God. Thank you, honey.

DISPATCHER:          You're welcome.

MS. TESTER:          Thank you.  Can I stay on the phone 'til they've arrived?

DISPATCHER:          Yeah.

MS. TESTER:          OK, 'cause I can't ? the phone – it's all messed up and (unclear) my cell phone

DISPATCHER:          OK

MS. TESTER:          I messed it up accidentally.

                     ----- (LONG PAUSE) -----

MS. TESTER:          Ma'am?

DISPATCHER:          Yes?

MS. TESTER:          OK.  They're not here yet.

DISPATCHER:          They're on their way, OK?

MS. TESTER:          Yeah.  I don't want them to (unclear) …… tell some kind of big story about me.  There is no big story about me, except that they don't wanna do for me what's supposed to be done.

DISPATCHER:          Mmm

MS. TESTER:          Let's hope they're not going to listen to those, are they? Huh? Are they?

DISPATCHER:          OK

FEMALE VOICE:        So what's going on with Anne?

MS. TESTER:          I need help!


-----------------------------CALL INTERRUPTED-----------------------------


DISPATCHER:          Warrick 911

MS. TESTER:          Hello.

DISPATCHER:          Hello.  Can you hear me?

MS. TESTER:          Yeah, I can.  Who is this?

DISPATCHER:          This is 911 for Warrick County.   What's going on?

MS. TESTER:          They don't want to help me.  I'm in a very bad way.  I need help and they are ignoring me the whole night and you said you were coming and I thought you were you.  Then the nurse did come in and said what do you need, Anne?  (unclear)  But I thought you all would be right in behind her. No, it was just her.  She didn't do anything for me.  Honey…

DISPATCHER:          OK, What else –

| | |
|---|---|
| MS. TESTER: | So then she left.  I need to be repositioned in my bed.  I can't hardly breathe.  And I've had my… She did help me get my CPAP on, but I can't reach it.  I've got to be positioned where I can breathe!  And I can't walk, I can't shuffle into bed.  I don't have the strength to do it all by myself. |
| DISPATCHER: | OK – |
| MS. TESTER: | And then she says, I say, to use the bell in my room and someone would take care of me, and so they know (unclear) honey, I don't have any other way but to call you all 'cause I can't get the phone to ring, all it does is send busy signals or (unclear) someone to actually help me out. |
| DISPATCHER: | OK, do, well do we need to call a nurse to come back in there? |
| MS. TESTER: | I want you do come do my (unclear)  I'm on the (unclear)  floor and my room is 3-0-3-B and tell them to make sure they aren't over me.  They can watch, I don't care, but they won't fool around if they know the police is there. |
| DISPATCHER: | OK.  And you said it's 303D as in David? |
| MS. TESTER: | No, B as in boys. |
| DISPATCHER: | B as in boy.  OK. |
| MS. TESTER: | Please come rescue me.  I can't do this (sobs) |
| DISPATCHER: | OK, OK…We'll send you somebody, OK?  Your name was Anne? |
| MS. TESTER: | Yes.  And, and, please, make sure they come in my room. |
| DISPATCHER: | OK. OK.  We'll make sure. |
| MS. TESTER: | OK, I'll hang on the line (unclear)   I can't do anything. . . |
| DISPATCHER: | OK, OK. |
| MS. TESTER: | I need help! |
| DISPATCHER: | OK. Hold on just a second for me then Anne. |
| MS. TESTER: | OK. |
| DISPATCHER: | Anne, are you still there? |

| | |
|---|---|
| MS. TESTER: | Yeah, they haven't come |
| DISPATCHER: | They haven't come yet? |
| MS. TESTER: | No, no, no (sobbing) |
| DISPATCHER: | OK |
| MS. TESTER: | (sobbing) If I don't have you guys, I'll be dead.  I'll just be dead, that's all.  If you don't take care of me I'm gonna be dead.  This is (unclear) abuse |
| DISPATCHER: | We have an officer who's going to come out there and give the nurses a call to see what's going on.  OK?  They're gonna get you some help, alright? |
| MS. TESTER: | They're gonna call? |
| DISPATCHER: | We… they're gonna have to handle it however they see fit so they'll probably – |
| MS. TESTER: | Thanks! If they don't come out here and check on me, I'll be dead! I don't want that!  I don't want any other way! |
| DISPATCHER: | Of course not. |
| MS. TESTER: | No other way! |
| DISPATCHER: | Of course not. |
| MS. TESTER: | No other way. |
| DISPATCHER: | They're gonna take care of it.  They're gonna take care of it, OK? |
| MS. TESTER: | I can't breathe.  I can't breathe all the entire night. Do you not (unclear) what I'm telling you? I can't breathe.  I can't breathe. AAAAAGH, AAAAGH, AAAAGH (Sobbing).  I'm gone Aaaagh. |
| DISPATCHER: | It's gonna be OK, alright.  We're gonna get you taken care of, OK? |
| MS. TESTER: | (crying) I need y'all, I can't breathe. I need y'all!  I need y'all or I'm gonna die. |
| DISPATCHER: | OK, Anne, just…just hang on just a second, OK? |

-----------------------------CALL INTERRUPTED-----------------------------

DISPATCHER:          Warrick County 911.  What's the location of your emergency?

MS. TESTER:          Ma'am, you get a sheriff out here. I can't do this (crying). I can't. I'm begging you – get an officer out here to check on me. I can hardly  breathe. I'm in a bad position I've got to get straight and get my body in a good position and then I'll cut out from everybody (unclear)

DISPATCHER:          Anne, the officer has spoken with your nurses and they're gonna take care of you, OK?

MS. TESTER:          Oh, God, don't you know, they ignore me and I know it right now, the way I am (unclear)  to civilization is you guys (unclear) and, oh God, I need to die, I need to die, I need to die right now….the nurses, they don't care about me.  Oh, God (sobbing)

DISPATCHER:          Anne, my officers have spoken to the nurses.  They're gonna take care of you.  We have other emergencies coming in and we cannot stay on the phone with you anymore.

MS. TESTER:          Bye-Bye.

DISPATCHER:          Bye-Bye.

32.     On January 12, 2022 At 1:34 a.m., a Progress Note was entered by Jamestine

Cook (hereinafter, "Ms. Cook"), an LPN, which stated as follows:

> Res. continue to yell out and was unable to redirect, Res kept taking off her bi - pap and throwing it on the floor. Attempt to redirect. Res does have her call light near her so that she can summon staff for assistance. Nursing management is aware of her behavior.

33.     Then, at 1:44 a.m. on January 12, 2022, another progress note was entered by Ms.

Cook the attested:

> Res. is calling on the house phone the Warrick Sheriff. Res. call several times .and A Warrick Sergeant return the call back to facility and request that she not be allow to use the phone if the res. continue to tie up the 911 lines. I went down to her rm. and explain to her that she can not tie up the 911 line. She is aware that it is wrong. at this time res. is sleeping at this time.

34.     On January 12, 2022 at 2:03 a.m., Mr. Tester received a voicemail from (812)

858-5300, a phone number registered to Hamilton Pointe, in which the following was stated:

> Hi, yes sir, Mr. Nathan, I'm calling you from, um, Hamilton Pointe regarding your
> mother.  Um, she has been on the phone several times, at times kind of hard to re-
> direct. Um, I just want you to be aware that, um, I had – I had to take the phones out
> of her room because she was calling the Sheriff's Department about three times.  So,
> um, she wasn't upset or anything else about the phones, but she has finally went to
> sleep for a little while.  If you have any questions you can call the facility.  And thank
> you for your time.

35.     A CAD from the Warrick County Sheriff's Office shortly after 7:00 a.m. was

recorded as follows:

| Incident # Nature | Date/Time Priority | Street Caller Name | Call Src | City Business | Additional Location Info | | Close | Agcy Prime Unit | Dist | St/Bt Report # | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022012066 | 01/12/2022 07:14:57 | 3800 ELI PLACE | | WC | | | | EMS | | MED3 | 166 |
| UNCONSCIOUS PERSON | P | | PHONE | HAMILTON POINT | | | IR | MED6 | 22-0221 | | |
| Notes: | [LAW] 87913 REQUESTING MED6 CALL HER CELL  [01/12/22 07:34:21 JANDERSON] | | | | | | | | | | |
| | MED6 REQUESTING CORONER  [01/12/22 07:32:04 JANDERSON] | | | | | | | | | | |
| | door5  [01/12/22 07:23:11 GRWINKLER] | | | | | | | | | | |
| | [FIRE] 6A14 ET  [01/12/22 07:18:24 JANDERSON] | | | | | | | | | | |
| | full code not breathing  [01/12/22 07:15:45 GRWINKLER] | | | | | | | | | | |
| | skilled 300 hall  [01/12/22 07:15:18 GRWINKLER] | | | | | | | | | | |

| | Time Received: 01/12/2022 07:14:57 | 1st Arrive: 01/12/2022 07:25:38 | | | Incident Response Time:  #Error | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Dispatch | En-Route | Arrive | Transport | Hospital | Clear | Close Code | Unit Response Time | On-Scene |
| MED6 | 01/12/2022 07:16:22 | 07:17:40 | 07:25:38 | 00:00:00 | 00:00:00 | 07:45:12 | IR | 000:09:16 | 000:19:34 |
| | | | | | | # Units: 1 | | | |

| Incident # Nature | Date/Time Priority | Street Caller Name | Call Src | City Business | Additional Location Info | | Close | Agcy Prime Unit | Dist | St/Bt Report # | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022012067 | 01/12/2022 07:15:23 | 3800 ELI PLACE | | WC | | | | FIRE | | OTFD | OTFD |
| UNCONSCIOUS PERSON | P | | PHONE | HAMILTON POINT | | | IR | SQ60 | 22-0068 | | |
| Notes: | [LAW] 87913 REQUESTING MED6 CALL HER CELL  [01/12/22 07:34:21 JANDERSON] | | | | | | | | | | |
| | [EMS] MED6 REQUESTING CORONER  [01/12/22 07:32:04 JANDERSON] | | | | | | | | | | |
| | [EMS] door5  [01/12/22 07:23:11 GRWINKLER] | | | | | | | | | | |
| | 6A14 ET  [01/12/22 07:18:24 JANDERSON] | | | | | | | | | | |
| | [EMS] full code not breathing  [01/12/22 07:15:45 GRWINKLER] | | | | | | | | | | |
| | skilled 300 hall  [01/12/22 07:15:18 GRWINKLER] | | | | | | | | | | |

| | Time Received: 01/12/2022 07:15:23 | 1st Arrive: 01/12/2022 07:23:37 | | | Incident Response Time:  #Error | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Dispatch | En-Route | Arrive | Transport | Hospital | Clear | Close Code | Unit Response Time | On-Scene |
| 6SQ2 | 01/12/2022 07:18:47 | 07:18:50 | 07:23:37 | 00:00:00 | 00:00:00 | 08:42:42 | AST | 000:04:50 | 001:19:05 |
| BAT60 | 01/12/2022 07:18:16 | 07:18:19 | 00:00:00 | 00:00:00 | 00:00:00 | 07:25:11 | AST | :: | :: |
| OTFD1 | 01/12/2022 07:15:58 | 00:00:00 | 00:00:00 | 00:00:00 | 00:00:00 | 07:19:03 | AST | :: | :: |
| OTFD2 | 01/12/2022 07:15:59 | 00:00:00 | 00:00:00 | 00:00:00 | 00:00:00 | 07:19:06 | AST | :: | :: |
| SQ60 | 01/12/2022 07:17:56 | 07:17:56 | 00:00:00 | 00:00:00 | 00:00:00 | 07:24:50 | IR | :: | :: |
| | | | | | | # Units: 5 | | | |

36.     On January 12, 2022 at 7:50 a.m., a Progress Note was entered by Lorlie Faith,

and RN, that stated as follows:

> @0700 this nurse found the resident unresponsive, without respirations or pulse,
> verified by 2 nursing staff, chest compressions initiated, EMR alerted.

15

37.     Mr. Tester was asleep at the time that the voicemail was left on his cell phone, and did not discover that message until late on the morning of January 12, 2022.

38.     In January 2022, Mr. Tester, accompanied by counsel, met with a detective at the Warrick County Sheriff's Office to file a police report regarding the circumstances surrounding Ms. Tester's death.

39.     On January 27, 2022, Mr. Tester, through counsel, received a Word document dated January 25, 2022 from Sarah A. Seaton, AGACNP-BC, CMDI, the Coroner for Warrick County, Indiana, detailing her investigation into the death of Ms. Tester (the "Coroner's Investigation Report").[5]

40.     In general, during her time at Hamilton Pointe, Mr. Tester observed that the staff that was present appeared to be poorly trained in dealing with patients.  Mr. Tester observed that Ms. Tester would have outbursts against staff as a result of them not taking care of her basic needs.

41.     Mr. Tester also observed that while Ms. Tester was at Hamilton Pointe, her condition gradually got worse.  This happened despite the fact that the goal upon her admittance into Hamilton Pointe was to have her health improve to the point where she could return to her prior living arrangement – with family.

42.     Moreover, Mr. Tester was appalled that while at Hamilton Pointe, Ms. Tester was sometimes left in an unchanged diaper for hours on end without being changed, and had been told by staff that they were not going to come back in Ms. Tester's room after the first hour to tend to her.

43.     The foregoing demonstrates that Defendants had a practice of deliberate

---

[5] A true and accurate copy of the Coroner's Investigation Report is attached hereto as Exhibit 1.

indifference to medical needs and/or a series of bad acts that together raise the inference of such a policy.

44.     In fact, according to the Indiana Department of Health Division of Long Term Care Consumer Report for Hamilton Pointe Health and Rehab (the "Consumer Report"), Hamilton Pointe has had five (5) Substantiated Complaints against it within the last two (2) years, as well as ten (10) Federal Certification Actions Imposed against it since January 2020.[6]

## IV.     CAUSES OF ACTION

### COUNT I – DEPRIVATION OF RIGHTS
### UNDER COLOR OF STATE LAW (42 U.S.C. § 1983)

45.     Plaintiff restates incorporates each and every allegation in paragraphs 1 through above 44 as though fully set forth herein.

46.     Defendant Riverview is a corporation owned by Hamilton County, Indiana, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.

47.     Defendant Hamilton Pointe is wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.  It is a nursing facility as contemplated by 42 U.S.C.S. § 1396r.

48.     Defendant NPM wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.]

49.     Defendant TLC manages Hamilton Pointe with its powers of management

---

[6] A true and accurate copy of the Consumer Report is attached hereto as Exhibit 2 and incorporated herein.

delegated to it by Riverview, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.

50.     The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained  within the 1987 OBRA, and the implementing regulations therefore, found at 42 C.F.R. § 483, et seq., clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

51.     The Defendants' actions, individually and/or collectively, and in derogation of the above statutes and regulation, deprived Ms. Tester of those rights:

    A.  By maintaining a policy, practice, or custom, that failed to care for Ms. Tester in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life of her as a resident;

    B.  By failing to provide, or arrange for the provision of, nursing and related services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Ms. Tester, that met the professional standards of quality;

    C.  By failing to provide, or arrange for the provision of, medically-related social services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Ms. Tester, that met the professional standards of quality;

    D.  By not protecting and promoting the rights of each resident, including Ms. Tester, by depriving Ms. Tester of her right to choose a personal attending physician, to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and to participate in planning care and treatment or changes in care and treatment;

    E.  By not protecting and promoting the rights of each resident, including Ms. Tester, by depriving Ms. Tester of her right to free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms;

F.  By not protecting and promoting the rights of each resident, including Ms. Tester, by depriving Ms. Tester of her right to reside and receive services with reasonable accommodation of individual needs and preferences;

G.  Upon information and belief, by not protecting and promoting the rights of each resident, including Ms. Tester, by depriving Ms. Tester of her right to be informed orally and in writing at the time of admission to the facility, of the her legal rights during the stay at the facility and of the requirements and procedures for establishing eligibility for medical assistance under 42 USCS §§ 1396 *et seq.*, including the right to request an assessment under section 1924(c)(1)(B) [42 USCS § 1396r-5(c)(1)(B)];

H.  By denying Ms. Tester of her access and visitation rights failing to permit immediate access to her by immediate family or other relatives of the resident, in particular by taking away her means of contacting them in the form of phones in her room on January 12, 2022;

I.  By denying Ms. Tester of her access and visitation rights by entities or individuals that provide health, social, legal, or other services to the resident, in particular by telling the Warrick County Sheriff's Office not to send a deputy or ambulance when Ms. Tester called for them;

J.  By failing to be administered in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Ms. Tester (consistent with requirements established under subsection (f)(5)); and

K.  By filing to operate in compliance with Federal, State, and local laws and/or professional standards and principles which apply to professional providing services in such a facility.

52.  The Defendants' actions were intentional, willful, and/or in reckless disregard of Ms. Tester's rights.

53.  As a result of the Defendants; unlawful actions, Ms. Tester suffered damages, including, but not limited to, physical and mental pain and suffering, emotional distress, humiliation, and embarrassment.

## COUNT II – 42 U.S.C. § 1983 DUE PROCESS CLAIM

54.  Plaintiff restates and incorporates each and every allegation in paragraphs 1 through 53 as though fully set forth herein.

55.     Defendant Riverview is a corporation owned by Hamilton County, Indiana, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983

56.     Defendant Hamilton Pointe is wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.  It is a nursing facility as contemplated by 42 U.S.C.S. § 1396r.

57.     Defendant NPM is wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.]

58.     Defendant TLC manages Hamilton Pointe with its powers of management delegated to it by Riverview, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.

59.     Plaintiff alleges an action pursuant to the Fourteenth Amendment of the Constitution of the United States of America Against Defendants.

60.     During the January 12 Pleas for Help, irrefutably withdrew and revoked any consent for treatment by Hamilton Pointe, and specifically stated that she did not have strength to get up and that Hamilton Pointe refused to help her.

61.     Despite her pleas for help and affirmations that she would die if no one was sent to help her, the Defendants did not help Ms. Tester, and in a phone call with a Warrick County Sheriff's Deputy, Hamilton Pointe told the Warrick County Sheriff's Office not to send anyone to help.

62.     Hamilton Pointe then took away her phone, making it impossible for Ms. Tester to reach anyone outside of the walls of the facility in order to get help.

63.     Despite her plea, an ambulance did not remove her from Hamilton Pointe and get her to a hospital as a direct result of Hamilton Pointe telling them not to come.

64.     Ms. Tester had withdrawn her consent to remain at Hamilton Pointe, and at this point was in the Defendants' custody and at their mercy.

65.     42 U.S.C. § 1983 prohibits any person acting under color of law from subjecting any person in custody to punitive conditions of confinement without due process of law.

66.     The Defendants, acting under color of law, intentionally and with conscious callous and deliberate indifference, deprived Ms. Tester of her constitutional rights to due process.

67.     The Defendants, based upon the foregoing facts, placed Ms. Tester in a situation of serious danger, and held Ms. Tester in that situation of serious danger against her will.

68.     The Defendants' above-described conduct, acts, and/or omissions constituted deliberate indifference to Ms. Tester's serious medical and mental needs, and violated her rights under the Fourteenth Amendment to the Constitution of the United States of America to due process of law, and violated 42 U.S.C. § 1983.

69.     The Defendants' failure to protect Ms. Tester shock the conscience.

70.     The Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Ms. Gomes' Fourteenth Amendment rights, her mental suffering, anguish, other injuries, and death.

71.     Plaintiff, pursuant to 42 U.S.C. §1983, demands actual or compensatory damages

against the Defendants, and because the Defendants acted maliciously, wantonly, or oppressively, punitive damages against them in their individual capacities, plus the costs of this action, plus attorneys' fees and such other and additional relief as this Court deems equitable and just.

**COUNT III – 42 U.S.C. § 1983**
**EIGHTH AMENDMENT CLAIM FOR INADEQUATE MEDICAL CARE**

72.     Plaintiff restates and incorporates each and every allegation in paragraphs 1 through 71 as though fully set forth herein.

73.     Defendant Riverview is a corporation owned by Hamilton County, Indiana, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.

74.     Defendant Hamilton Pointe is wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.  It is a nursing facility as contemplated by 42 U.S.C.S. § 1396r.

75.     Defendant NPM is wholly-owned by Riverview and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.]

76.     Defendant TLC manages Hamilton Pointe with its powers of management delegated to it by Riverview, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage of [the State of Indiana]" as that term is used in 42 U.S.C. § 1983.

77.     During the January 12 Pleas for Help, Ms. Tester irrefutably withdrew any

consent for treatment by Hamilton Pointe, and specifically stated that she did not have strength to get up and that Hamilton Pointe refused to help her.

78.   The Defendants had full access to her health records, knew that Ms. Tester had a serious health need regarding her difficulty breathing, knew from her conduct and pleas for help that Ms. Tester weas suffering, and acted with a deliberate indifference to Ms. Tester's suffering.

79.   Denial of appropriate treatment of Ms. Tester, who was in the Hamilton Pointe Defendants' custody, and who the Defendants had denied any access to outside help when they took away Ms. Tester's phone, was a violation of the Eighth Amendment of the United States Constitution as applied to the states by and through the Fourteenth Amendment of the United States Constitution.

80.   The Defendants were "persons" acting under color of state law when they so deprived Ms. Tester of her Constitutional rights.

81.   The Defendants made a deliberate choice not to act to help Ms. Tester, to get Ms. Tester help, or to allow Ms. Tester to get herself help for her serious medical needs.

82.   In fact, Hamilton Pointe specifically told the Warrick County Sheriff's Office not to send help for Ms. Tester.

83.   The Defendants' refusal to treat Ms. Tester, deliberate direction to the Warrick County Sheriff's Office not to provide help, and intentional removal of Ms. Tester's ability to contact anyone outside the facility for help inflicted suffering upon Ms. Tester that is inconsistent with contemporary standards of decency and that violated the Eighth Amendment of the United States Constitution.

84.   The Defendants' actions constituted unnecessary and wanton infliction of pain upon

Ms. Tester.

85.    The Defendants' conduct, actions and/or omissions were the direct and proximate cause of the violations of Ms. Gomes' Constitutional rights, her mental suffering, anguish, other injuries, and death.

86.    The Defendants' failure to protect Ms. Tester shocks the conscience.

87.    Plaintiff, pursuant to 42 U.S.C. §1983, demands actual or compensatory damages against the Defendants, and because the Defendants acted maliciously, wantonly, or oppressively, punitive damages against them in their individual capacities, plus the costs of this action, plus attorneys' fees and such other and additional relief as this Court deems equitable and just.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for Judgment as follows:

1.    Judgment in favor of the Plaintiff, and against the Defendants, jointly and severally, for actual, consequential, and compensatory damages caused to Plaintiff;

2.    An award of punitive damages against all Defendants for additional, punitive, and exemplary damages;

3.    An award of its costs and attorney's fees incurred in prosecuting this action;

4.    An award to Plaintiff and against all Defendants of pre-judgment and post-judgment interest at the maximum statutory rate on all sums awarded.

5.    Trial by jury;

6.    Leave to amend the Complaint, if necessary; and

7. For all other relief that is just and proper in the premises and to which

Plaintiff may be entitled against Defendants, jointly and severally.

## VI.   <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted on this the 9th day of January, 2024,

/s/ Christopher W. Riccio
Christopher W. Riccio
Indiana Attorney No. 35652-82
RICCIO LAW, PLLC
100 East Veterans Boulevard, First Floor
Owensboro, Kentucky 42303
Telephone:    (270) 313-5074
Email:          ricccw8@gmail.com
*Counsel for Plaintiff*

/s/ John David Meyer
John David Meyer
MEYER & MEYER, LLP
100 E Veterans Blvd.
Owensboro, Kentucky 42303
Telephone:    (270) 313-5074
Fax:            (270) 926-2621
Email:          jdmeyerlaw@bellsouth.net
*Counsel for Plaintiff to File Motion*
*to be Admitted Pro Hoc Vice*

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff, the Estate of Lacetta Anne Tester, by and through Personal Representative

Nathan D. Tester, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

/s/ Christopher W. Riccio
Christopher W. Riccio
Indiana Attorney No. 35652-82
RICCIO LAW, PLLC
100 East Veterans Boulevard, First Floor
Owensboro, Kentucky 42303
Telephone:     (270) 313-5074
Email:            ricccw8@gmail.com
*Counsel for Plaintiff*

/s/ John David Meyer
John David Meyer
MEYER & MEYER, LLP
100 E Veterans Blvd.
Owensboro, Kentucky 42303
Telephone:     (270) 313-5074
Fax:               (270) 926-2621
Email:            jdmeyerlaw@bellsouth.net
*Counsel for Plaintiff to File Motion
to be Admitted Pro Hoc Vice*